IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VELOCITY INTERNATIONAL, INC., <br> d/b/a <br> VELOCITY BROADCASTING, <br><br> Plaintiff, <br><br> vs. <br><br> CELERITY HEALTHCARE SOLUTIONS, INC. <br> f/k/a <br> CELERITY HEALTHCARE SOLUTIONS LLC, <br><br> Defendant and Third-Party <br> Plaintiff, <br><br> vs. <br><br> PHILIP ELIAS, <br><br> Third Party Defendant. | Civil Action No. 09-102 |

**MEMORANDUM OPINION**

Pending before the Court is a motion by Plaintiff Velocity International, Inc. ("Velocity"), and Third Party Defendant Philip Elias ("Elias") to dismiss three of the five counterclaims raised by Celerity Healthcare Solutions, Inc. ("Celerity"), in its Answer to Velocity's Complaint.[1] For the reasons discussed below, the motion to dismiss is denied without prejudice and Celerity is

---

[1] On May 27, 2009, the parties filed a joint motion (Doc. No. 17) to consolidate this case with Civil Action No. 09-151 in which Velocity alleged that Celerity had breached the Reseller Agreement, infringed Velocity's trademark, and engaged in unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a) and (c). The motion to consolidate the cases was granted on May 28, 2009, at Doc. No. 18 herein. In its answer to the Complaint in CA No. 09-151, Celerity had filed certain counterclaims which Velocity moved to dismiss. (See, respectively, Doc. Nos. 13 and 15 at CA No. 09-151.) The counter-claims, the bases for their dismissal, and the arguments of the parties are identical in both cases. Velocity's motion to dismiss in CA No. 09-151, Doc. No. 15, is therefore denied as moot.

directed to file an Amended Answer and Counterclaims consistent with the analysis herein.

## I. INTRODUCTION

### A. Factual and Procedural Background

At first glance, this case appears to be a simple breach of contract case between two sophisticated parties. Plaintiff, a Pennsylvania corporation, is in the business of providing high definition custom television programming to invited audiences. Velocity entered into a contract with Defendant Celerity, an Ohio corporation, under which Celerity would serve as Plaintiff's agent to market, promote and sell Velocity's specialized television programs, particularly to the pharmaceutical industry; Velocity has similar "Reseller Agreements" with a number of other independent contractors focused on other market segments. Velocity also is a party to contracts with certain restaurants, for example, Morton's The Steakhouse ("Morton's"), which have private dining or hospitality areas where select audiences such as physicians can view the programs Velocity has produced. One of Celerity's tasks was to solicit audiences for programs to be produced by Velocity, and to arrange the television broadcasts at Morton's or another contracted restaurant.

According to the Complaint, in June 2008, Celerity scheduled a Velocity-produced broadcast for one of its customers, the

pharmaceutical company AstraZeneca[2] which was to be shown at 61 Morton's restaurants throughout the United States on August 19, 2008. A few days later, Velocity agreed to Celerity's request that the broadcast be postponed until October 28, 2009, in order to accommodate the customer's schedule. Celerity booked a second broadcast for AstraZeneca in September for a December 2, 2008 showing. Velocity received a $24,500 payment from Celerity for these two bookings.

On September 28, 2008, Celerity cancelled the October 28, 2008 broadcast and, as a result, owed Velocity cancellation fees provided for in the Reseller Agreement. In October, Celerity cancelled the December 2 showing. Celerity then proposed that instead of paying the cancellation fees required by the Reseller Agreement, the previously scheduled broadcasts would be shown sometime in early 2009; in exchange, AstraZeneca or Celerity would provide Velocity with payment in full before the end of 2008. However, when Celerity did not make the required payments totaling almost $454,000, Velocity sent written notice to Celerity on December 16, 2008, demanding that it cure this breach of the Reseller Agreement within 30 days. Celerity not only refused to make the payments by the end of the year, it advised Celerity on January 9, 2009, that it did not intend to pay the outstanding

---

[2] The Complaint does not identify this customer, however, in the Counterclaims, Celerity alleges that this was the customer to which Velocity referred.

3

cancellation fees at any time.

Velocity filed suit in this Court on January 28, 2009, seeking damages for Celerity's breach of the Reseller Agreement and a declaratory judgment that Velocity was entitled to terminate the agreement due to Celerity's material breach thereof.

In its Answer to the Complaint, Celerity painted a quite different picture of the relationship between the parties. (*See* Answer and Counterclaims, Docket No. 12.) Celerity alleged that in 2008, despite a mutually beneficial relationship between the two parties which had lasted for several years, Elias, Velocity's principal, began to engage in conduct specifically intended to harm Celerity. For instance, in October 2008, Celerity requested $55,000 which it was due pursuant to an oral agreement, but Elias and Velocity refused to pay. Elias engaged in other actions which were intended to undermine Celerity's sales efforts, to devalue the company as an ongoing concern, and to deprive Celerity of the benefits of the Reseller Agreement, all with the goal of preventing Celerity from reaching its annual revenue goals. Velocity would then be able to terminate the Celerity Reseller Agreement and engage another contact for the lucrative pharmaceutical industry at terms more favorable than those of the Reseller Agreement with Celerity.

Celerity further alleged that Elias and Velocity took other actions aimed at eliminating Celerity as its contact with the

4

pharmaceutical industry, for instance, withholding their consent to reasonable contract modifications requested by AstraZeneca, a long-standing customer of both Celerity and Velocity; demanding cancellation fees related to the September and December 2008 broadcasts when the broadcasts had not been definitively cancelled but merely postponed because the U.S. Food and Drug Administration had not yet approved the drug in question; providing confidential pricing information to Celerity's customers; hiring its own inside sales force to compete with Celerity and allowing those salespersons to contact Celerity's established customers; and providing a Celerity competitor with confidential information about the company's business model, product, and customers, all in violation of the Reseller Agreement.

Celerity's Answer to the Complaint incorporated five counterclaims: Count I, breach of the Reseller Agreement by Velocity; Count II, breach of an oral agreement between the principals of the parties; Count III, breach of the duty of good faith and fair dealing; Count IV, tortious interference with Celerity's current and prospective business relationships, brought against both Velocity and Elias; and Count V, a declaratory judgment that Celerity was entitled to terminate the Reseller Agreement because of Velocity's conduct.

On April 14, 2009, Velocity filed a Motion to Dismiss Celerity's counterclaims pursuant to Federal Rule of Civil

Procedure 12(b)(6), arguing that three of the five counterclaims fail as a matter of law. Celerity filed a brief in opposition to the motion to dismiss and the matter is now ripe for decision.

B. <u>Venue and Jurisdiction</u>

This Court has original subject matter over the claims raised by both parties inasmuch as the parties are of diverse citizenship and the amount in controversy is greater than $75,000.00. See 28 U.S.C. § 1332(a). Venue is proper in this judicial district inasmuch as the events giving rise to the claims herein occurred in the Western District of Pennsylvania. See 28 U.S.C. § 1391(a).

**II. STANDARD OF REVIEW**

Under Rule 12(b)(6), a defendant moves to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In the wake of <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and <u>Phillips v. County of Allegheny</u>, 515 F.3d 224 (3d Cir. 2008), the United States Court of Appeals for the Third Circuit has provided guidance on the appropriate standard to be applied by district courts in considering a motion to dismiss.

In <u>Wilkerson v. New Media Tech. Charter Sch., Inc.</u>, 522 F.3d 315 (3d Cir. 2008), the Court of Appeals first noted that in <u>Twombly</u>, the Supreme Court rejected "the oft-repeated language" that a court may not dismiss a complaint "unless it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Wilkerson, 522 F.3d at 322, *quoting* Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Instead, the Court in Twombly held that the complaint should "plausibly suggest[]" that the pleader is entitled to relief. Wilkerson, id., *quoting* Twombly, 127 S.Ct. at 1966. The Court of Appeals further noted although

> the exact parameters of the Twombly decision are not yet known, we read Twombly to mean that factual allegations must be enough to raise a right to relief above the speculative level. In other words, stating a claim requires a complaint with enough factual matter (taken as true) to suggest the required element. The complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element. Rule 8 (a)(2) of the Federal Rules of Civil Procedure requires the pleader not only to provide a "short and plain statement," but also a statement "showing that the pleader is entitled to relief."

Wilkerson, 522 F.3d at 322, internal quotations from Twombly and Phillips omitted.

As noted in Phillips, while the Supreme Court did not address the long-established rule about drawing all reasonable inferences favor of the plaintiff when considering a motion to dismiss, the Court of Appeals concluded "we do not read [the Twombly] decision undermine that principle." Phillips, 515 F.3d at 231. The Supreme Court has recently reiterated, however, that this rule does not apply to legal conclusions. *See* Ashcroft v. Iqbal, No. 07-1015, 2009 U.S. LEXIS 3472, *29 (U.S. May 18, 2009), *citing* Twombly, 127 S.Ct. at 1955 ("Threadbare recitals of the elements of a cause of

7

action, supported by mere conclusory statements, do not suffice.") Moreover, "determining whether a complaint states a plausible claim for relief. . .[is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 2009 U.S. LEXIS 3472 at *30. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief." Id., internal quotation omitted; see also Fed.R.Civ.P. 8(a)(2).

## III. ANALYSIS

In its Answer, Celerity raises five counterclaims and seeks punitive damages and attorneys' fees. Velocity does not propose that Counterclaims I and V be dismissed. We address each of the remaining claims in the order in which they appear in Celerity's Answer and Counterclaims.

### A. <u>Counterclaim II -Breach of the Parties' Oral Agreement</u>

Celerity alleges that in an oral agreement reached between its principal, Kurt Janson ("Janson"), and Elias, the parties agreed that the network access fees to be charged to Celerity's customer AstraZeneca for any broadcasts in 2008 would be discounted by ten percent. Despite performance of all its obligations under this oral agreement, Celerity contends that in October 2008, when it requested payment of $55,000.00 due to it pursuant to this oral agreement, Velocity and Elias refused,

thereby breaching the agreement. (Counterclaims, ¶¶ 26-27; 107-109.)

Velocity argues that this claim must be dismissed because the Reseller Agreement explicitly provides that Celerity's customers must pay the published prices for any broadcasts it sells. (Memorandum in Support of Motion to Dismiss, Doc. No. 15, "Velocity Memo," at 12. ) The Reseller Agreement further provides that it cannot be modified except by a writing signed by both parties. Pennsylvania law provides that "no oral modification" clauses in a contract are fully enforceable and therefore this claim must fail as a matter of law. (Id. at 12-13, citing Hoff Supply Co. v. Allen-Bradley Co., 768 F.Supp. 132, 135 (M.D. Pa. 1991), for the principle that "no oral modification" clauses are generally enforceable under both common law and the Uniform Commercial Code.) The only relevant exception is where the party alleges facts which demonstrate or raise an inference that the parties agreed to an intentional waiver of the relevant provision, an allegation Celerity has failed to make. (Id. at 13, citing C.I.T. Corp. v. Jonnet, 214 A.2d 620, 622 (Pa. 1965).) Finally, the Reseller Agreement contains a merger clause stating that it reflects the complete agreement between the parties and supersedes all previous agreements, "written or oral." Because the agreement is fully integrated and cannot be altered absent a writing signed by both parties, Celerity's claim for breach of an oral contract is legally

insufficient. (Velocity Memo at 12.)

Celerity argues that this claim should not be dismissed for three reasons. First, Pennsylvania law recognizes that despite "no oral modification" clauses in written agreements, an oral modification can be effective where the conduct of the parties clearly shows the intent to waive the requirement that all amendments be in writing. (Brief in Opposition to Plaintiff's Motion to Dismiss, Doc. No. 16, "Celerity Brief," at 17, *citing* Somerset Community Hosp. v. Allen B. Mitchell & Associates, 685 A.2d 141, 146 (Pa. Super. 1996) (" A written contract which is not for the sale of goods may be modified orally, even when the written contract provides that modifications may only be made in writing.")) Because the question of whether such a modification by conduct has occurred is for the finder of fact, Velocity's argument is premature. Second, Jonnet has been questioned by the Pennsylvania Supreme Court which considered the case misleading because it did not take into account equitable considerations of no oral modification clauses. (Celerity Brief at 18, *citing* Universal Builders, Inc. v. Moon Motor Lodge, Inc., 244 A.2d 10, 16 (Pa. 1968) ("[T]he effectiveness of a non-written modification in spite of a contract condition that modifications must be written depends upon whether enforcement of the condition is or is not barred by equitable considerations, not upon the technicality of whether the condition was or was not expressly and separately waived before the

non-written modification.")) Finally, Velocity's argument that because the Reseller Agreement is fully integrated and therefore cannot be altered except in writing does not apply because integration applies only to prior negotiations and agreements, not to subsequent modifications. The oral contract between Velocity and Celerity was made in October 2008, well after execution of the Reseller Agreement in March 2008, and therefore the integration clause has no bearing on the parties' subsequent oral modification. (Celerity Brief at 17-18, *citing* Hart v. Arnold, 884 A.2d 316, 341 (Pa. Super. 2005) (A "written contract, if unambiguous, must be held to express all of the negotiations, conversations, and agreements made *prior to* its execution.")(emphasis added).)

We agree well-established Pennsylvania law provides that despite the existence of "no oral modification" provisions in a written contract, such modifications may be binding where the words or conduct of the parties show by "clear, precise and convincing evidence" that the parties waived that provision. First Nat'l Bank v. Lincoln Nat'l Life Ins. Co., 824 F.2d 277, 280 (3d Cir. 1987), citing cases. We conclude Celerity has sufficiently alleged the facts surrounding an oral modification of the Reseller Agreement by Janson and Elias and that Velocity and Elias subsequently breached that contract by failing to reduce the fees charged on the AstraZeneca broadcasts. Whether that claim can be supported by clear, precise, and convincing evidence is not a question to be

11

determined as a matter of law in a motion to dismiss. We also agree with Celerity's position regarding the effectiveness of the alleged oral modification made after the written agreement. *See* Martin v. Monumental Life Ins. Co., 240 F.3d 223, 233 (3d Cir. 2001), *citing* Nicolella v. Palmer, 248 A.2d 20 (Pa. 1968). Provisions of such a written agreement, as noted above, may under some circumstances be waived by the parties' course of conduct. Therefore, Velocity's motion with regard to Counterclaim II is denied but may be raised again following discovery.

    B.    Counterclaim III -Breach of the
           Duty of Good Faith and Fair Dealing

In this portion of its Counterclaims, Celerity alleges that "Velocity's course of conduct, as set forth above, constitutes a material breach of the duty of good faith and fair dealing implied in all contracts under Pennsylvania law." (Counterclaims, ¶ 112.)

Velocity argues that this count must be dismissed because Pennsylvania law precludes a party from maintaining a separate implied duty of good faith claim where the allegations of bad faith are "identical to" a claim for "relief under an established cause of action." (Velocity Memo at 11, *citing* Northview Motors, Inc. v. Chrysler Motor Corp., 227 F.3d 78, 91-92 (3d Cir. 2000).) While independent claims for breach of the duty of good faith and fair dealing are permitted in some instances not relevant here, no separate claim for such a breach is recognized where the parties

12

have memorialized their mutual obligations and rights in great detail. The allegations of Counterclaim III add "absolutely nothing" Celerity's breach of contract claim and therefore should be dismissed. (Velocity Memo, id.)

Celerity concedes that generally, a claim for the breach of duty of good faith and fair dealing is subsumed into claim for breach of contract where the allegations of bad faith "essentially mirror" the allegations underlying the breach of contract claim. (Celerity Brief at 14-15.) However, such a claim may be independently sustained where it is based on conduct which is not the same as the actions which underlie the breach of contract claim. (Id.) Celerity argues that its bad faith claim arises from the facts that Velocity (1) unreasonably refused to allow modification of the intellectual property language in the standard agreement between Celerity and its customers and (2) unreasonably refused to allow AstraZeneca to reschedule the broadcasts in late 2008 even after it learned that government approval of the drug featured in the broadcasts had been delayed. On the other hand, the breach of contract claims in Counterclaim I pertain to Velocity's breach of the Reseller Agreement by imposing unauthorized cancellation charges and by violating the non-disclosure and non-solicitation provisions of that agreement. Thus, the claims arise from two different sets of circumstances and both may be raised in a single complaint. (Id. at 15-16.)

13

While Celerity may have tied the statement of its breach of good faith claim more closely to the factual allegations in its Counterclaims, the Court had no difficulty identifying the relevant allegations once they were pointed out. *See* paragraphs 38 through 52 regarding the refusal to modify the intellectual property provisions of Celerity's agreement with a customer and paragraphs 53 through 62 regarding postponement of the broadcasts. However, Velocity may be excused for failing to discern this from the vague allegation that its "course of conduct, as set forth above" was meant to apply to those allegations in particular. Celerity is directed to Amend its Answer to state this Counterclaim with more specificity.

### C. Counterclaim IV - Tortious Interference with Existing and/or Prospective Contractual Relations

> Under Pennsylvania law, to prevail on a claim for tortious interference with existing or prospective contractual relationships, a party must prove: (1) the existence of a contractual or prospective contractual or economic relationship between the plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; (4) legal damage to the plaintiff as a result of the defendant's conduct; and (5) for prospective contracts, a reasonable likelihood that the relationship would have occurred but for the defendant's interference.

Acumed LLC v. Advanced Surgical Servs., 561 F.3d 199, 212 (3d Cir. 2009).

Celerity alleges that Velocity and Elias embarked on a course of conduct specifically intended to harm Celerity's actual and

14

prospective contractual relationships by depriving it of the ability to sell its services and reach its annual revenue goals in order to give Velocity grounds to terminate its Reseller Agreement. Velocity also undertook a number of activities which not only breached the Reseller Agreement, but also tortiously interfered with the agreements between Celerity and its customers such as refusing to permit modifications to the intellectual property provisions of its agreement with AstraZeneca and by increasing prices which negatively affected the same agreement. (Counterclaims, ¶¶ 35-37; 63-69.)

Velocity argues that it cannot be held liable for tortious interference with Celerity's contracts for two reasons. First, because Velocity was a third-party beneficiary to the contracts between Celerity and its customers, it was a participant in the economic transactions at issue, and it cannot, as a matter of law, have interfered with a contract to which it was a party. Second, a claim for tortious interference with contractual relations cannot be maintained where the alleged wrongful interference resulted only from Velocity's assertion of its contractual rights as set forth in the customer agreements. (Velocity Memo at 7-10.)

The Reseller Agreement between the parties explicitly states that as the Reseller, Celerity

> will enter into a written agreement with each Customer ("Customer Agreement"). Velocity shall not be a party to any Customer Agreement but shall be deemed a third party beneficiary pursuant to Customer Agreements. Velocity

15

understands and acknowledges that there will be
circumstances under which the agreements between Reseller
and Customer will not mirror Exhibit B, but such fact
shall not relieve Reseller of its obligations to Velocity
hereunder except with Velocity's prior written approval
in each instance. Nevertheless, Reseller agrees to use
best efforts to secure an agreement with Customer that
that [sic] is consistent with the terms set forth in
Velocity's standard customer agreement (titled "Velocity
Broadcast Agreement", a sample of which is attached as
Exhibit B).

(Exhibit 1 to Complaint, Reseller Agreement dated October 1, 2007, Section 11.B.)

The sample Customer Agreement provided by Velocity as Exhibit B to the Reseller Agreement does not provide that Velocity is to be a third party beneficiary to the contract between Celerity and its customers; this is not surprising because the sample is based on a contract between Velocity itself and an ultimate customer. Therefore, the only document now before the court which pertains to Velocity's status as a third-party beneficiary of the agreements between Celerity and its customers is the Reseller Agreement itself.

Under Pennsylvania law, a party can only establish third-party beneficiary status

> where both parties to the contract express an intention
> to benefit the third party in the contract itself. . . ,
> unless, the circumstances are so compelling that
> recognition of the beneficiary's right is appropriate to
> effectuate the intention of the parties, and the
> performance satisfies an obligation of the promisee to
> pay money to the beneficiary or the circumstances
> indicate that the promisee intends to give the
> beneficiary the benefit of the promised performance.

Wawrzynek v. Statprobe, Inc., 422 F. Supp.2d 474, 481 (E.D. Pa.

2005), *quoting* Scarpitti v. Weborg, 609 A.2d 147, 150-151 (Pa. 1992) (citations omitted.)

Here, neither party provides an actual example of a contract between Celerity and one of its customers, so it is unclear if Velocity was designated as a third party beneficiary of such a contract. We find Velocity's first basis for dismissal of the tortious interference claim therefore premature.

As for the second argument, Velocity specifically argues that because Celerity was required to use its best efforts to obtain terms consistent with the sample agreement in the contracts it entered into with its customers, those contracts would have allowed Velocity to approve any modifications in the terms thereof. Consequently, if Velocity refused to allow such modifications, any claim Celerity might have in this regard would be based in breach of contract, not in tort. Again, in the absence of any customer contracts, we find this argument premature.

Because we have, at least for the time, rejected Velocity's arguments regarding the claim that the corporation did not tortiously interfere with Celerity's contracts with its customers, we also deny without prejudice Elias's motion to dismiss the tortious interference claim against him individually.

D. <u>Punitive Damages and Attorneys' Fees</u>

In its prayer for relief, Celerity seeks punitive damages and its costs arising from this suit, including attorneys' fees. (Answer and Counterclaims at 26-27.) Velocity argues there is no

17

legal basis for an award of attorneys' fees in this case and that
Celerity contractually agreed in the Reseller Agreement that it
would not be entitled to punitive damages in the event of a dispute
between the parties. Celerity has failed to cite any statute,
agreement or recognized exception to the general American Rule that
each party to a legal dispute is responsible for its own costs and
expenses. (Velocity Memo at 13, *citing* Equibank v. Miller, 619 A.2d
336, 338 (Pa. Super. 1993).) Moreover, punitive damages are not
available for breach of contract and even if the tort counterclaim
were allowed to proceed, a limitations clause in the Reseller
Agreement bars any right to punitive damages. (Id. at 14, *citing*
Samuel Bassett v. KIA Motors America, Inc., 357 F.3d 392, 402 (3d
Cir. 2004).)

Celerity responds that its demand for punitive damages is
appropriate pursuant to its tortious interference with contractual
relations claim because it has properly pled that the actions of
Velocity and Elias were "intentional, willful, malicious and
specifically intended to harm Celerity." (Celerity Brief at 19,
citing Counterclaim ¶ 119.) It argues that this allegation
satisfies the legal requirement for awarding punitive damages where
the acts were "done with a bad motive or with a reckless
indifference to the interests of others." Reading Radio v. Fink,
833 A.2d 199, 214 (Pa. Super. 2003). Celerity does not address
the question of its claim for attorneys' fees and therefore the

Court will strike that demand from its prayer for relief.

We agree that the Reseller Agreement precludes either party from being "liable for any indirect, special, punitive, or consequential damages. . .arising from or related to this agreement regardless of the form of action even if the party was informed of the possibility of such damages." (Complaint, Exhibit B, Section IX, Limitation of Liability.)

We agree with Celerity that punitive damages may be available where a defendant is found to have acted with malice when interfering with the plaintiff's actual or prospective contractual relationships. See Feld v. Merriam, 485 A.2d 742, 748-749 (Pa. 1984), *citing* Restatement (2d) of Torts, § 908(2). Were Celerity able to show that Velocity tortiously interfered with the actual or prospective contracts between Celerity and its customer(s), the damages could be found to arise from the third-party contracts, rather than from the Reseller Agreement. We therefore deny without prejudice Velocity's motion to dismiss the prayer for punitive damages.

An appropriate order follows.

June __9__, 2009

_William L. Standish_
William L. Standish
United States District Judge